**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANTANDER CONSUMER USA, INC.,<br><br>Plaintiff,<br>v.<br><br>INCORPORATED VILLAGE OF HEMPSTEAD, AAAA NASSAU, INC., and WILLIAM CARLOTTI,<br><br>Defendants. | (Electronically Filed)<br><br>Civil Case No.:<br><br>**COMPLAINT** |

Santander Consumer USA, Inc., ("Santander"), as and for its Complaint against Defendants, The Incorporated Village of Hempstead ("Hempstead"), AAAA Nassau, Inc. d/b/a Nassau Auto Body & Towing ("Nassau Auto") and William Carlotti ("Carlotti") "Defendants," alleges:

## NATURE OF ACTION

1. Hempstead regularly seizes vehicles as part of its law enforcement activity but has no procedure for disposing of seized vehicles consistent with the basic due process requirements for notice and a hearing. Hempstead does not obtain a warrant or rely upon an exception to the warrant requirement for any of its conduct beyond the initial seizure. Instead, Hempstead employs the outdated and constitutionally unsound practice of summarily turning over control of seized vehicles to Nassau Auto which then imposes an *ex parte* lien for various charges. In this regard, Hempstead's policy is to enlist Nassau Auto to tow and store vehicles and allow Nassau Auto to lien and/or sell the vehicle as a means to cover the costs of towing and storage and other fees for which Hempstead contracted Nassau Auto.

2. Hempstead's policy and practice of summarily turning over seized vehicles to Nassau Auto is a joint enterprise under a written contract between Hempstead and Nassau Auto where the power to enforce payment is derived from the mantle of authority created by Hempstead and implemented by the Hempstead police. Nassau Auto benefits by using its control over seized vehicles (created under mantle of authority from Hempstead) to profit by either selling the vehicles or by conditioning release of the vehicles upon payment of money to Nassau Auto. Hempstead benefits by obtaining Nassau Auto's services without providing Nassau Auto monetary compensation.

3. After seizing the vehicle at issue in this action—a 2015 Hyundai Sonata bearing the vehicle identification number "5NPE34AF8FH105842" (the "Vehicle")—Hempstead afforded no due process to Santander—a pre-existing lienholder in the Vehicle—and instead summarily disposed of the Vehicle by giving it to Nassau Auto as payment for the services that Hempstead had contracted Nassau Auto to provide. Nassau Auto accepted the Vehicle from Hempstead as compensation, asserted an *ex parte* lien for those services, insisted that Santander's lien was inferior to Nassau Auto's, and asserted that Santander could not recover the Vehicle unless it complied with all conditions imposed by Hempstead and/or Nassau Auto. Defendants did not afford Santander the opportunity for a hearing nor did Defendants compensate Santander in any way.

## JURISDICTION AND VENUE

4. This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

5. The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

6. Venue lies in the Court pursuant to 28 U.S.C. § 1391(b)(1), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7. Plaintiff Santander is a corporation incorporated in the State of Illinois, and the holder of the duly perfected security interest in the Vehicle.

8. Defendant Hempstead is municipal corporation organized and existing under laws of the State of New York.

9. Defendant Nassau Auto is, upon information and belief, a corporation incorporated in the State of New York which is engaged in the business of towing and storing motor vehicles.

10. Defendant Carlotti is, upon information and belief, an individual resident of the State of New York, the President of Nassau Auto, and the owner of Nassau Auto. Upon information and belief, Carlotti is therefore the person responsible for setting the policies and practices of Nassau Auto.

## FACTS

**Plaintiff's Interests in the Vehicle**

11. Santander holds a duly perfected security interest in the Vehicle.

12. Before June, 2021 and any other facts relevant to this action, non-party Bobby Devin Hogan (the "Customer") entered into a retail installment contract to finance the purchase of the Vehicle, which contract was assigned to Santander. By virtue of that transaction, Santander obtained the aforementioned perfected security interest in the Vehicle.

13. Before, on, and after June 2021, Santander held and continues to hold first priority security interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

14. On or around January 17, 2019, the Customer defaulted on the payment obligations under the retail installment contract, thereafter entitling Santander to immediate possession of the Vehicle.

15. By virtue of Hempstead's seizure of the Vehicle, and by virtue of amounts AAAA Nassau, Inc. claimed by way of possessory lien on the Vehicle, the Customer was also and further in non-monetary default of the terms of the retail installment contract, thereafter also further entitling Santander to immediate possession of the Vehicle.

16. In or about June 2021, Hempstead seized the Vehicle and instructed Nassau Auto to tow it away from the roadway and store it at Hempstead's direction, giving rise to the actions at issue in this litigation.

**<u>Hempstead and Nassau Auto's Policies and Customs for the Seizure, Detention and Disposition of Vehicles</u>**

17. Hempstead carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

18. Hempstead delegates a portion of the performance of its essential functions to Nassau Auto. Specifically, Hempstead police utilize Nassau Auto to tow away, store, dispose of and sell vehicles seized by Hempstead police acting in the course of their duties as law enforcement officers.

19. Pursuant to this relationship, Hempstead exercises governmental authority to seize vehicles.

20. Hempstead extends the mantle of its authority to Nassau Auto to ensure that Nassau Auto has a basis to claim that its seizure and detention of vehicles from owners and lienholders is lawful and not an act of theft as it would be if Nassau Auto took the vehicle without police authority and in the absence of permission from that owner or lienholder.

21. Nassau Auto is not paid money by Hempstead for its towing and storage services, but instead, accepts the seized vehicles from Hempstead—which vehicles Hempstead does not own—as either partial or total payment for the towing and storage services Nassau Auto provides to Hempstead.

22. Nassau Auto then impresses an *ex parte* lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

23. After assessing an *ex parte* lien, Nassau Auto refuses to return possession of the vehicles to *any* other person until its fees and charges are paid—even those with pre-existing property rights in the vehicles—while claiming additional daily storages charges.

24. To effectuate disposal of a vehicle, Hempstead declares a vehicle to be salvage and applies to the New York State Department of Motor Vehicles for a salvage title.

25. Hempstead then uses the salvage title to purportedly give legal title, free and clear of all liens, to Nassau Auto.

26. Hempstead benefits from granting the mantle of authority to control vehicles to towing companies as Hempstead is thereby relieved of the burden and costs of preserving such vehicles. Without Nassau Auto's conduct, Hempstead would be forced to store and preserve vehicles following seizure.

27. Hempstead benefits from Nassau Auto's assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without Nassau Auto's conduct, Hempstead would be forced to pay Nassau Auto for the services Nassau Auto provides Hempstead by using money instead of the vehicles that were seized.

28. Hempstead benefits from its joint activity with Nassau Auto in that Hempstead receives a sizable payment from Nassau Auto in exchange for Hempstead extending the mantle of its authority to Nassau Auto.

29. In the course of the above-described conduct, it is Hempstead's and Nassau Auto's regular policy and custom **<u>not</u>** to obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

A. The initial seizure of the vehicle;

B. The turnover of possession of the vehicle to Nassau Auto;

C. The decision by Hempstead and/or Nassau Auto to continue to detain the vehicles after the initial reason for the seizure has passed;

D. The decision of Nassau Auto to assert an *ex parte* lien;

E. The act of obtaining a salvage title; and

F. The eventual sale of the vehicle.

30. Even if the initial seizure of the vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, the (possibly) valid initial seizures were rendered unreasonable in their execution because of the further actions listed in ¶ 29 (B-F), which actions could not have been justified by a (possibly) valid initial warrantless seizure.

31. It is Hempstead's and Nassau Auto's regular policy and custom, in the course of the above-described conduct, not to provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the actions in ¶ 29 (A-F):

32. It is Hempstead's and Nassau Auto's regular policy and custom, in the course of the above-described conduct, to take private property for public use without compensation by way of the actions listed in ¶ 29 (A-F).

33. These actions, all taken in accordance with Hempstead's and Nassau Auto's regular policies and customs for seizing and disposing of seized motor vehicles, violate the United States Constitution Article I, Section 10, Clause 1, as well as the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

**Hempstead Seized the Vehicle, in Which Santander Held a Constitutionally Protected Interest, and Gave It to Nassau Auto for Disposal**

34. Nassau Auto actively and regularly tows and stores vehicles at the direction of Hempstead police officers acting in the regular course of their duties as law enforcement officers.

35. On or about June 2021, Hempstead seized the Vehicle and instructed Nassau Auto to tow it away from the roadway and store it at Hempstead's direction.

36. Before, on, and after June 2021, Santander held the first priority security interest and lien which was duly recorded on the title to the Vehicle. Specifically, the Customer had entered into a retail installment contract to finance the purchase of the Vehicle, which contract had been assigned to Santander, who, by virtue of that transaction, had obtained and continued to hold a perfected security interest in the Vehicle.

37. As of January 17, 2019, Santander's security agreement underlying its lien in the Vehicle was in serious default for non-payment thereby entitling Santander to immediate possession of the Vehicle.

38. Santander had no involvement with or knowledge of the operation of the Vehicle at the time it was seized by the Hempstead Police and/or Nassau Auto.

39. Santander became aware that Hempstead and Nassau Auto had seized the Vehicle only after the seizure and possessory claim by Nassau Auto had attached.

40. At the time Hempstead obtained a salvage title for the Vehicle, the Vehicle was not damaged and the application for salvage title was wrongful.

41. Neither Hempstead nor Nassau Auto took any measure to afford Santander an opportunity for a hearing relative to the seizure or transfer of the Vehicle to Nassau Auto for assertion of a *defacto* lien for costs of removal and storage, the alteration of the Vehicle title to a salvage title and disposal of the Vehicle.

42. Hempstead benefited from Nassau Auto's detention of the Vehicle to secure payment in that Hempstead was freed from the cost and burden of preserving the Vehicle and

obtained Nassau Auto's services to clear the roadway and store the Vehicle with no payment (or reduced payment) of money from Hempstead to Nassau Auto.

43. Hempstead benefited from the joint enterprise with Nassau Auto in that Hempstead made money by contract with Nassau Auto when Nassau Auto paid Hempstead in order to participate in the joint enterprise.

44. Nassau Auto only possessed the Vehicle by virtue of its relationship with Hempstead and acted in concert with Hempstead Police to seize, detain and dispose of the Vehicle. Nassau Auto had no other right to remove the Vehicle from the roadway and hold it against anyone. Nassau Auto was, therefore, required to comply with the Constitution in relation to its seizure, detention and disposal of the Vehicle, and Hempstead is responsible because its policies set the entire series of events in motion.

**Hempstead and Nassau Auto's Conduct Constituted Unreasonable Seizures of Santander's Property in Violation of the Fourth and Fourteenth Amendments**

45. In determining to seize the Vehicle and place it under control of Nassau Auto, Hempstead meaningfully interfered with constitutionally protected interests in the Vehicle.

46. In arranging to place the property of another, *i.e.* the Vehicle, into the possession of Nassau Auto for purposes of disposing of it, Hempstead again meaningfully interfered with constitutionally protected interests in the Vehicle.

47. Hempstead and Nassau Auto interfered with constitutionally protected interests in the Vehicle through Nassau Auto's continued detention of the Vehicle (and ultimate disposal by sale) to secure payment of an alleged lien for towing and storage charges for alleged services Nassau Auto rendered to Hempstead.

48. In taking all of the actions listed in in ¶ 29(A-F), Hempstead and Nassau Auto meaningfully interfered with constitutionally protected interests in the Vehicle.

49. In detaining the Vehicle to secure payment of an alleged lien for towing and storage charges for alleged services Nassau Auto rendered to Hempstead and in taking title to the Vehicle, Nassau Auto meaningfully interfered with constitutionally protected interests in the Vehicle while acting under color of law.

50. These meaningful interferences with constitutionally protected property interests in the Vehicle by both Hempstead and Nassau Auto constituted seizures of the Vehicle under the Fourth Amendment to the United States Constitution.

51. Defendants did not have a warrant or any other court order authorizing any of the actions they took in relation to the Vehicle.

52. There is no valid exception to the warrant requirement for Hempstead's and Nassau Auto's conduct for any of the actions in relation to the Vehicle.

53. In particular, there is no valid exception to the warrant requirement for turning over possession of another person's property (the Vehicle), nor for accepting possession of that property in lieu of payment for services, nor for securing a salvage title to that property.

54. There is also no valid exception to the warrant requirement for continuing to detain a person's property (the Vehicle) as collateral to secure payment of an *ex parte* lien.

55. There is also no valid exception to the warrant requirement for selling that person's property (the Vehicle) to foreclose on an *ex parte* lien.

56. Each of Defendants' distinct actions constituted a separate and distinct seizure of the Vehicle:

a. First, Hempstead's removal of the Vehicle from the roadway was an improper seizure of the Vehicle;

b. Second, Hempstead's entrustment of the Vehicle to Nassau Auto was an improper seizure of the Vehicle;

c. Third, Defendants' continued possession and detainment of the Vehicle was an improper seizure of the Vehicle;

d. Fourth, it was an improper seizure of the Vehicle for Nassau Auto to assert an *ex parte* lien to secure payment of its alleged towing and storage fees; and

e. Fifth, Nassau Auto's alteration of the title and transfer of the Vehicle to itself was an improper seizure of the Vehicle.

57. Alternatively, these actions constituted a single seizure which was unreasonable in the manner of its execution.

58. Because none of these actions were accompanied by any warrant, court order, or valid exception to the warrant requirement, each was an unreasonable violation of the Fourth Amendment to the United States Constitution.

59. Even if Defendants had a valid exception to the warrant requirement to justify *initially* taking the Vehicle into custody, Defendants' distinct actions beyond that initial (possibly valid) seizure still rendered the seizure unreasonable in its execution within the meaning of the Fourth Amendment.

**<u>Hempstead and Nassau Auto 's Conduct Constituted Deprivation of Santander's Property Without Due Process of Law in Violation of the Fourteenth Amendment</u>**

60. Hempstead is required to comply with due process requirements and to provide holders of property interests in vehicles, including Santander, with notice and an opportunity to be heard before any deprivation of an interest in a seized vehicle.

61. Santander's property rights included its lien and collateral interest in the Vehicle and its immediate right to possess the Vehicle by reason of the payment default on its security interest.

62. Hempstead did not secure judicial review of its initial seizure of the Vehicle, its placement of the Vehicle into Nassau Auto's possession, and its alteration of the title of the Vehicle, either before or shortly after the seizure occurred.

63. Hempstead did not secure judicial review of Hempstead and Nassau Auto's continued detention of the Vehicle (and salvage title) to secure payment of an alleged *ex parte* lien for towing and storage fees relating to the services Nassau Auto performed for Hempstead.

64. In delegating its essential governmental function of clearing the roadway to Nassau Auto, Hempstead did not require Nassau Auto to provide procedural safeguards—such as notice and opportunity to be heard—to interested parties prior to imposition of a lien on the towed vehicle or the continued detention of the vehicle and accrual of storage charges.

65. Neither Hempstead nor Nassau Auto provided judicial review of any of Defendants' actions in relation to the Vehicle.

66. Because neither Hempstead nor Nassau Auto provided any procedure for review of their actions by a neutral decisionmaker, Santander did not receive constitutionally adequate notice of those non-existent procedures.

67. The manner in which Santander became aware of Hempstead and Nassau Auto's seizure of the Vehicle and Nassau Auto's continued possession of the Vehicle did not constitute adequate notice for the purposes of due process.

68. A letter from Hempstead after the seizure, which merely demanded money in exchange for possession of the Vehicle, did not constitute constitutionally adequate notice.

69. Notice, in the constitutional sense, does not mean notification of a list of demands, but instead means notice ***of a procedure*** for contesting the deprivation. No such notice was provided to Santander by any party.

70. By not providing constitutionally adequate notice, nor any right to be heard before a neutral decisionmaker regarding any of the aforementioned actions, Hempstead and Nassau Auto's actions deprived Santander of its property without due process of law in contravention of the Fourteenth Amendment to the United States Constitution.

**Hempstead's Own Conduct, and Nassau Auto's Conduct Made Pursuant to the Mantle of Authority Created by Hempstead, Constituted a Taking of Santander's Property for a Public Purpose Without Just Compensation in Violation of the Fifth and Fourteenth Amendments.**

71. Hempstead's essential government functions include seizure of vehicles through its police for a variety of reasons.

72. Hempstead delegated a portion of the performance of that essential function to Nassau Auto, who towed, stored, and detained the Vehicle at the request of the Hempstead police.

73. Hempstead compensated Nassau Auto, in whole or in part, by turning over possession of the Vehicle to Nassau Auto, who lawfully possessed the Vehicle only by virtue of having obtained it from Hempstead.

74. Nassau Auto accepted the Vehicle as compensation, in whole or in part, for the services it provided to Hempstead, namely the towing and storage of the Vehicle that Hempstead had seized.

75. Hempstead benefited by granting the mantle of its authority to control the Vehicle to Nassau Auto by being relieved of the burden and costs of towing and storing the Vehicle, or of compensating Nassau Auto for towing and storing the Vehicles.

76. Nassau Auto, under color of law as afforded by Hempstead, attempted to extract more of Santander's property—its money—by wrongfully conditioning Santander's right to possession of the Vehicle and lien priority in the Vehicle upon Santander's payment of exorbitantly high and inappropriately levied fees.

77. Hempstead destroyed Santander's lien interest in the Vehicle by using the salvage title process to remove Santander's lien form the title.

78. Hempstead thereby took Santander's interests in the Vehicle—its titled interest and right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

79. Thus, Hempstead and Nassau Auto's actions deprived Santander of its private property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

## CAUSES OF ACTION

## COUNT I
**Violation Of Civil Rights Pursuant To Title 42 U.S.C. § 1983**
**(Deprivation Of Property By Unreasonable Seizure)**
**(Deprivation Of Property Without Due Process Of Law)**
**(Taking Of Property Without Just Compensation)**
**(As Against All Defendants)**

80. Santander repeats and realleges all the foregoing allegations as though fully set forth herein.

81. Santander is the holder of a constitutionally protected property interest in the Vehicle including the right to immediate possession of the Vehicle.

82. Defendants acted under color of state law when they seized, detained, and disposed of the Vehicle without first providing a) any form of notice or hearing during which Santander could protect its interests and b) just compensation. Further, the Defendants sought to deprive Santander of even more of its property—its money—by insisting that the Vehicle can only be recovered upon satisfaction of unilaterally imposed conditions. These actions deprived Santander of the following valuable property interests and contract rights:

a. Santander's lien and collateral interest in the Vehicle;

b. Santander's money that Nassau Auto sought to force Santander to pay to Nassau Auto;

c. Santander's right to possession of the Vehicle; and

d. Santander's right to protect its security by using its non-monetary default terms to recover the Vehicle.

83. Defendants acted under color of law to seize Santander's property, and such seizure was unreasonable.

84. Defendants acted under color of law to deprive Santander of its property without due process of law.

85. Defendants acted under color of law to deprive Santander of its property for government purposes without just compensation to Santander.

86. Defendants acted under color of law to substantially interfere with Santander's contract for no significant and legitimate public purpose.

87. Hempstead and Nassau Auto knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

88. As a direct and proximate result of Hempstead's and Nassau Auto's violation of Santander's constitutional rights, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from the Vehicle, and other damages.

89. Hempstead's policies and customs were to provide Nassau Auto with a mantle of authority—thereby enhancing Nassau Auto's power—which was the moving force that allowed Nassau Auto to exercise control over the Vehicle.

90. Defendants' conduct in relation to the Vehicle was taken in accordance with Defendants' standard policy and/or custom for the handling and disposal of seized vehicles.

91. Nassau Auto's official decisions are attributable to Carlotti, who dictated Nassau Auto's standard policy and/or custom in relation to the handling and disposal of seized vehicles obtained from Hempstead.

92. Alternatively, the failure by Hempstead and Nassau Auto policy makers to properly train or supervise subordinates regarding due process in conjunction with the seizure, detention, and assertion of charges and liens against vehicles—as made clear by numerous Court

decisions confirming well settled rules of law—amounts to deliberate indifference to the rights of persons who have interests in vehicles that are seized, detained, subjected to charges, and liened by Nassau Auto after seizure by Hempstead.

93. But for Hempstead and Nassau Auto's above described policies, decisions, and practices, Santander would have recovered the Vehicle, by reason of measures that preserve legitimate interests but that are less intrusive than the continued detention of the Vehicle, without delay, without incurring liability for or loss due to towing and storage charges impressed *ex parte*, without incurring liability for or loss due to further storage charges accruing daily, without loss of lien priority to the claim asserted by Nassau Auto against the Vehicle, and without loss its title interest as destroyed when Hempstead altered the title.

94. Therefore, Santander is entitled to relief under 42 U.S.C. § 1983.

## COUNT II
**Violation of New York State Constitution**
**(Deprivation Of Property Without Due Process Of Law)**
**(Deprivation by Unreasonable Seizure)**
**(Deprivation Of Property Without Just Compensation)**
**(As Against All Defendants)**

95. Santander repeats and realleges all the foregoing allegations as though fully set forth herein.

96. For the same reasons as described more fully above, Hempstead and Nassau Auto's actions also violate the corresponding protection of Article I of the New York State Constitution set forth in Article I.

**COUNT III**
**Declaratory Relief**
**(As Against All Defendants)**

97. Santander repeats and realleges all the foregoing allegations as though fully set forth herein.

98. An actual controversy has arisen and now exists between Santander and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

99. Santander seeks a declaration that the Defendants' conduct and policy manifested by their joint enterprise indicated is unconstitutional.

100. Defendants assert that their conduct is constitutional.

101. Santander seeks a declaration that Hempstead and Nassau Auto's assertion of claims against the Vehicle are null and void as are all actions by Hempstead and Nassau Auto to exert control over the Vehicle after the initial seizure.

102. Santander seeks a declaration that the violations of the United States Constitution herein described occurring by reason of Hempstead's and Nassau Auto's actions relative to the Vehicle are chargeable to Hempstead, Nassau Auto and Carlotti, jointly and severally.

103. Santander seeks a declaration that Hempstead, Nassau Auto, and Carlotti, are liable to Santander pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1988 for all damages and attorney's fees suffered and incurred by Santander.

104. Santander seeks a declaration that, to the extent Defendants seeks to rely on any provisions of local law to justify the above-described actions, those laws are unconstitutional.

**COUNT IV**
**Conversion**
**(As Against Nassau Auto and Carlotti Only)**

105. Santander repeats and realleges all the foregoing allegations as though fully set forth herein.

106. Nassau Auto exercised wrongful dominion and control over the Vehicle by refusing to release it to Santander and/or by participating in the effort to transfer the Vehicle by salvage certificate and/or by selling the Vehicle.

107. As stated, Carlotti directly controls the actions of Nassau Auto including Nassau Auto's actions taken in an effort to convert the Vehicle.

108. Santander has suffered damages for lost value, loss of use, depreciation, and other actual damages as a result of Nassau Auto's and Carlotti's conduct.

109. Nassau Auto's and Carlotti's actions—holding Santander's property hostage unless and until Santander complied with Nassau Auto's demands and selling the Vehicle without proper notice—required Santander to litigate this issue thereby entitling Santander to recover its attorneys' fees as consequential damages of Nassau Auto's and Carlotti's actions.

110. Nassau Auto's and Carlotti's actions warrant punitive damages because such conduct continued despite settled state court authorities condemning such conduct.

**COUNT V**
**New York State General Obligations Law 349**
**(As Against Nassau Auto and Carlotti Only)**

111. Santander repeats and realleges all the foregoing allegations as though fully set forth herein.

112. The repair and storage of automobiles is a consumer-oriented business as that business is highly regulated under V&T 398-a "to protect the consumers of the state . . . ." Practices relative to the charging of repair and storage fees on automobiles and practices for collecting such fees are consumer-oriented practices.

113. Nassau Auto holds a contract whereby it regularly tows vehicles within a set geographical location at the police's direction and, pursuant to this contract, Nassau Auto towed the Vehicle.

114. Nassau Auto's towing practice and practice of asserting liens for storage fees on towed vehicles potentially impact any consumer who is operating a vehicle within the geographic area for which Nassau Auto tows under its police contract.

115. Nassau Auto habitually misrepresents to consumers and lienholders that the consumer and/or lienholder must pay an amount to redeem a vehicle towed under Nassau Auto's police contract that is grossly inflated and exaggerated.

116. Nassau Auto habitually asserts a garageman's lien against consumers and lienholders for such exaggerated storage fees relating to police requested towing even though Nassau Auto knows that it has not complied with the requirements of the Lien Law needed in order for a lien to arise.

117. Nassau Auto habitually misrepresents to consumers and lienholders that police authorization and a hold harmless agreement are required to redeem a vehicle that has been towed at the request of law enforcement, when New York State Law does not permit a garage to impose such conditions.

118. Nassau Auto habitually detains vehicles from consumers and lienholders based upon demands for police authorizations and hold harmless agreements.

119. Nassau Auto's assertion of a garageman's lien and detention of vehicles is directly intended to alter the rights of the consumer owner and lienholder in the vehicle.

120. The sums of money demanded by Nassau Auto in this case relate to Nassau Auto's handling of a consumer's vehicle which was being operated for personal, family or household use.

121. Imposition of exaggerated or unwarranted fees on detained vehicles satisfies the misleading element of GBL 349.

122. While operating a consumer-oriented business engaged in the towing and storage of consumer vehicles, Nassau Auto: a) imposed exaggerated and/or unwarranted storage fees relating to its handling of the Vehicle; b) misrepresented that it had a lien when Nassau Auto did not follow the procedures needed to have a lien; c) misrepresented that a police release and hold harmless agreement were needed in order to redeem and recover the Vehicle; d) detained the Vehicle to force payment of its unwarranted fees; and e) participated in the transfer of the Vehicle by salvage title.

123. Nassau Auto has engaged in the deceptive practice of concealing an ever increasing lien which operated to ensure that an interested party could not protect its interests.

124. Nassau Auto has engaged in the deceptive practice of transferring vehicles on salvage certificates so that interested parties, including Santander, cannot exercise redemption rights mandated by Lien Law 203.

125. A finance company has standing to assert a GBL 349 cause of action where a garage has used charges generated from the garage's handling of a consumer vehicle to impede the finance company's right to take possession of that vehicle or damage the finance company's interest therein by thwarting the finance company's right to redeem.

126. Nassau Auto harmed Santander directly by denying Santander possession of the Vehicle, by charging Santander the exaggerated and unwarranted fees generated from its handling of the subject consumer vehicle, by participating in the transfer of the Vehicle by salvage certificate, and by needlessly requiring that Santander obtain a police release and hold harmless agreement. Therefore Nassau Auto caused direct pecuniary harm to Santander.

127. Nassau Auto has directly damaged Santander by using the exaggerated and/or unwarranted fees generated from its handling of the subject consumer vehicle to impede and deny Petitioner/Plaintiff's statutory right to redeem under Lien Law 203.

128. Nassau Auto has directly damaged Santander by forcing Santander to incur legal fees to recover the Vehicle and restore the wrongfully altered title. Being forced to incur attorney's fees to obtain mandatory disclosures and to access basic rights constitutes direct harm under GBL 349.

129. Santander seeks actual damages, attorney's fees and treble damages as Nassau Auto's unlawful and deceptive practices were pursued with actual knowledge that they were wrongful and because of Nassau Auto's participation in the transfer of the Vehicle by salvage certificate.

130. Carlotti is jointly and severally liable with Nassau Auto as he is the person in control of Nassau Auto and the person who asserted Nassau Auto's claims against the Vehicle.

## PRAYERS FOR RELIEF

WHEREFORE, Santander requests that this Court:

G. Grant judgment in favor of Santander and against Defendants on all causes of action asserted herein;

H. Declare that Defendants violated Santander's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10, Clause 1, of the United States Constitution;

I. Declare unconstitutional, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, Hempstead's policy and/or custom of effectuating the governmental purpose of clearing motor vehicles from the roadway by compensating tow operators with the property of others—namely, other persons' motor vehicles and permanently enjoin such practices;

J. Declare unconstitutional, in violation of the Fourteenth and Fifth Amendments, Hempstead's policy and/or custom of placing other person's motor vehicles into the possession of third party tow operators, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral decision maker regarding the propriety of Hempstead's actions in disposing of those vehicles and permanently enjoin such practices;

K. Permanently enjoin Hempstead from altering titles to vehicles by obtaining salvage certificates where the vehicles are not damaged sufficiently to meet the designation of a salvage vehicle;

L. Permanently enjoin Nassau Auto from detaining possession of motor vehicles it obtains as a result of its relationship with government entities, including Nassau Auto, without providing notice and a hearing whereat persons with protected interests may challenge Hempstead's and/or Nassau Auto's actions and permanently enjoin restriction on lienholder rights to recover vehicles upon compliance with unilateral demands;

M. Award Santander actual and nominal damages against all Defendants, jointly and severally;

N. Award Santander the cost of prosecuting this action together with attorney's fees pursuant to 42 U.S.C. §1988;

O. Award compensatory damages, consequential damages, costs, and attorneys' fees against Hempstead, Nassau Auto and Carlotti, jointly and severally, and in favor of Santander;

P. Award compensatory damages, consequential damages, punitive damages, statutory treble damages, costs, and attorneys' fees against Nassau Auto and Carlotti, jointly and severally, and in favor of Santander;

Q. Declare any reliance by Defendants on local law inconsistent with the within-described constitutional rights, and, therefore, declare that any such local law, to the extent determined applicable, to be unconstitutional as applied; and

R. Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

Dated: July 27, 2022

**NORRIS, McLAUGHLIN, PA**

By: */s/ Nicholas Duston*
Nicholas A. Duston
Alexander Ryan Sokolof
7 Times Square, 21st Fl.
New York, NY 10036
naduston@norris-law.com
arsokolof@norris-law.com
(908)-722-0700

*Attorneys for Plaintiffs*