UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

SANTANDER CONSUMER USA, INC.,

Plaintiff,

-against-

INCORPORATED VILLAGE OF HEMPSTEAD, et al.,

Defendants.

-----------------------------------x

**MEMORANDUM & ORDER**
22-CV-4428 (EK)(ARL)

ERIC KOMITEE, United States District Judge:

Plaintiff Santander Consumer USA, Inc., a consumer finance company, brought this action under 42 U.S.C. § 1983. Pursuant to a financing arrangement, Santander held a security interest in a 2015 Hyundai Sonata. In June 2021, police in the Village of Hempstead observed the Sonata parked without license plates on a public street. In response, they caused a tow company, AAAA Nassau, Inc., to impound the car. Neither Santander nor the Sonata's owner paid the fees required to retrieve the vehicle. As a result, Hempstead declared the Sonata "abandoned." Later, the Village transferred title to the Sonata to AAAA as compensation for the tow company's services.

Santander claims that the impoundment and transfer constituted (1) an unlawful seizure in violation of the company's Fourth Amendment rights, (2) a taking without just compensation in violation of the Fifth Amendment, and (3) a

violation of its Fourteenth Amendment due process rights. These allegations are not novel; Santander and other finance companies have successfully brought the same or similar claims against other municipalities and cities in the Second Circuit.

Hempstead and Santander have now cross-moved for summary judgment.[1] For the reasons outlined below, Santander's motion is granted as to its takings and due process claims, while Hempstead's motion is granted on Santander's Fourth Amendment claim.

## I. Background

The following facts are drawn from the parties' Local Rule 56.1 statements and the exhibits appended to their summary judgment papers. Unless otherwise noted, the facts discussed are undisputed.

### A. Santander's Security Interest in the Sonata

In September 2017, an auto dealership sold the Sonata to Bobby Hogan pursuant to an installment contract. Def's. Local Rule 56.1 Counterstatement of Facts ¶ 4 ("Def.'s Rule 56.1"), ECF No. 48-1. Neither Hogan nor the dealership is a party here. The day of Hogan's purchase, the dealership assigned the installment contract to Santander Consumer USA,

[1] The Court previously entered default judgment against AAAA. Order Adopting Report and Recommendation 1, ECF No. 54.

Inc. ("Santander"). *Id* ¶ 5. The contract provided that "[u]pon [Hogan's] default," Santander could "repossess" the car. Pl.'s Ex. A, Installment Contract 2, ECF No. 47-4. As of May 2021, Hogan was in default. Def.'s Rule 56.1 ¶ 9.

**B. AAAA Impounds the Sonata**

On June 2, 2021, the Community Police Division in the Village of Hempstead ("Hempstead" or the "Village") Police Department received a complaint concerning a blue 2015 Hyundai Sonata. Def.'s Ex. 14, Scott Hovanec Aff. ¶¶ 3, 5, ECF No. 48-4. The complaint stated that the vehicle was "potentially abandoned or illegally parked" at the intersection of Smith Street and Sealey Avenue in Hempstead. *Id.* ¶ 3. According to the patrol officer who responded to the complaint, the intersection is a "mixed use residential and commercial area" with a "history of complaints from the [nearby] residents" concerning "abandoned" vehicles. *Id.* ¶ 4.

Upon arriving at the intersection, the officer observed that the Sonata had no license plates. *Id.* ¶ 5. He then conducted a Vehicle Identification Number ("VIN") search, which showed that the Sonata had an expired Florida registration. *Id.* He also inquired at several nearby automobile repair shops as to whether the vehicle belonged to them or their customers; none of the shops claimed it. *Id.* ¶ 6. Based on this information, the officer concluded that the Sonata

was indeed abandoned, and requested that the police department dispatch a tow truck. *Id.* ¶ 7.

Hempstead contracts with private companies that pay an annual fee to be included on the Village's rotating list of tow companies. Def.'s Rule 56.1 ¶ 14. The Village apparently does not pay the tow companies for their services; instead, the listed companies are permitted to collect tow fees from motorists claiming impounded vehicles. *Id.*

AAAA Nassau, Inc. ("AAAA") was next on the list, and it towed the Sonata to a secure lot. *Id.* ¶ 13. The next day, Hogan informed Santander of the impoundment. Pl.'s Local Rule 56.1 Counterstatement of Facts ("Pl.'s Rule 56.1") ¶ 6, ECF No. 45-1; Def.'s Rule 56.1 ¶ 17. About a week later, Santander hired a repossession company, America Recovery, to retrieve the Sonata. Pl.'s Rule 56.1 ¶ 7. America Recovery reached out to AAAA, requesting that it provide pictures of the vehicle, but AAAA refused. Def.'s Rule 56.1 ¶ 17.

**C. Hempstead Provides Santander Notice of the Impoundment**

Chapters 127 and 131 of Hempstead's Municipal Code govern the impoundment of vehicles in Hempstead. Def.'s Rule 56.1 ¶ 14; Def.'s Ex. 4, Village of Hempstead, NY, Code pt.2 ch. 127, § 127-2, -4 ("Hempstead Code"), ECF No. 48-3; Def.'s Ex. 5, Hempstead Code § 131-4, ECF No. 48-3. The parties do not dispute that Hempstead complied with its Code here. Def.'s Rule

56.1 ¶¶ 13-14; Pl.'s Rule 56.1 ¶¶ 5, 8.

To retrieve an impounded vehicle, a claimant must pay the tow company a tow fee of $175; "a daily storage charge" of $25; and a "surcharge of $45" for "vehicles towed without ignition and / or door key." Hempstead Code § 127-22; Def.'s Rule 56.1 ¶ 31. The claimant must also obtain an "impound release form" from the Hempstead Police Department, which authorizes the tow company to release the vehicle. Pl.'s Rule 56.1 ¶ 7; Def.'s Ex. 6, Hempstead Police Dep't Manual § 502.10, ECF No. 48-3.

The Code provides that "[a]ny motor vehicle impounded and not claimed within 10 days shall be deemed an abandoned [] vehicle." Hempstead Code § 131-4(C). Hempstead deems a vehicle "abandoned" when it remains unclaimed for the stated period, regardless of the reason for the impoundment. *Id.* At the ten-day mark, the Code calls for Hempstead to "make an inquiry concerning the last owner of such [abandoned] vehicles" through a title search. *Id.* § 131-4(C)(1). The Village must then inform the last owner that the vehicle has been "recovered as an abandoned vehicle" and that, if it is not claimed, Hempstead will "acquire ownership." *Id.* § 131-4(C)(2); Def.'s Ex. 8, Hempstead's Ltr. to Santander dated June 25, 2021, ECF No. 48-3. If the title search shows that a lien exists, the "notice shall also be sent to the lienholder." Hempstead Code § 131-4(C)(2).

In accordance with this provision, Hempstead mailed Santander a letter on June 25, after it identified the company as a lienholder. Def.'s Rule 56.1 ¶¶ 13-16. Santander received that letter on July 2. *Id.* ¶ 15. The letter stated that the Sonata had been "taken into custody as an abandoned vehicle." Hempstead's Ltr. to Santander dated June 25, 2021. It also provided that Hempstead would "acquire ownership" "unless the vehicle is claimed by the owner or the lienholder." *Id.* And it informed Santander that "if the vehicle [went] unclaimed," the company's "lien will be extinguished." *Id.* Santander did not pay the required fees. Def.'s Rule 56.1 ¶ 20.

Hempstead provides claimants two weeks from the date it sends notice to retrieve an impounded vehicle. Def.'s Ex. 12, Dep. of Hempstead Police Officer Mark Kirichenko ("Kirichenko Dep.") 30:19-25, ECF No. 48-3; Hempstead Code § 131-4(C)(2). According to Officer Kirichenko — the supervising officer of Hempstead's traffic unit — if no claimant comes forward within that period, Hempstead will sell the vehicle at auction or "transfer[]" ownership to the responsible tow company "in lieu of tow and storage charges." Hempstead Code § 131-4(C)(2); *see* Kirichenko Dep. 8, 29-31. When a vehicle is sold at auction, the sale proceeds "shall be held . . . for the benefit of the owner . . . for a period of one year," "less any expenses" due to the tow company. Hempstead Code

§ 131-4(C)(4)(b). But when Hempstead transfers ownership of a vehicle to the tow company, it provides no compensation itself to the owner or lienholder. *Id.*; Def.'s Rule 56.1 ¶ 23; Kirichenko Dep. 30-31, 38.

Hempstead provides no opportunity — either before or after it deems a vehicle subject to transfer or auction — for a hearing at which a claimant can contest the lawfulness of an impoundment or the terms of a vehicle's release. Kirichenko Dep. 45:1-3; Def.'s Rule 56.1 ¶¶ 29-30; Pl.'s Rule 56.1 ¶¶ 8, 12.

**D. Hempstead Transfers Title to AAAA**

On September 16, Hempstead issued a Salvage Certificate of Title to AAAA. Pl.'s Rule 56.1 ¶ 12; Def's Rule 56.1 ¶ 33; *see* Def.'s Ex. 9, Salvage Certificate of Title, ECF No. 48-3. The Certificate classified the Sonata as a "salvage vehicle." *Id.*; Kirichenko Dep. 37-8. That same day, Hempstead and AAAA executed a Bill of Sale pursuant to which AAAA obtained title to the Sonata at no cost. Def.'s Ex. 10, Bill of Sale, ECF No. 48-3; Kirichenko Dep. 38. Neither Santander nor Hogan received any compensation following the transfer.

In October 2021, Santander hired a law firm to assist in retrieving the Sonata. Pl.'s Rule 56.1 ¶ 13. In response to the firm's letter requesting information on how to retrieve the vehicle, the Hempstead Police Department advised that the Sonata

had been transferred to AAAA. *Id.* ¶¶ 13-16; Kirichenko Dep. 36-37. The record provides no indication of what happened to the Sonata after AAAA took possession of it. Pl.'s Rule 56.1 ¶ 16.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). And "[a] fact is material if it might affect the outcome of the suit under governing law." *Id.*[2]

When resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017). The movant bears the burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-movant would bear the burden of persuasion on a given issue at trial, the movant can satisfy its

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

burden of production either by "submitting evidence that negates an essential element of the non-moving party's claim," or "demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

If the movant carries its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). If the nonmoving party fails to do so, the Court should grant summary judgment. In performing this analysis, the Court resolves all ambiguities and draws all inferences in favor of the nonmoving party. *E.g.*, *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994).

## III. Discussion

### A. Hempstead is Entitled to Summary Judgment on Santander's Fourth Amendment Claim

Santander alleges three constitutional violations pursuant to Section 1983. Compl. ¶¶ 80-94, ECF No. 1; Rev. Stat. § 1979, 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, acting under the color of law, deprives another of a right secured by the federal Constitution.

*Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

1. Hempstead is Subject to *Monell* Liability

As a municipality, Hempstead can only be held liable under Section 1983 if its "policy or custom" was the "moving force of the constitutional violation." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Hempstead does not dispute that it acted in accordance with its impoundment policy here. Instead, Hempstead argues that Santander's alleged harm resulted from Santander's "refusal to follow the proper policies," not Hempstead's "purported action." Def.'s Opp'n to Pl.'s Mot. for Summary J. ("Def.'s Opp'n") 20, ECF No. 48. District courts in this Circuit have rejected materially identical arguments, concluding that *Monell* liability attaches when a city admits that it impounded a vehicle pursuant to an established tow policy. *Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870, 2024 WL 4817649, at *5 (S.D.N.Y. Nov. 18, 2024); *see Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 654 (S.D.N.Y. 2025).

The Court agrees with those decisions. For its part, Hempstead does not meaningfully contest their reasoning; instead, the Village is basically arguing that no constitutional violation occurred, sidestepping the *Monell* issue entirely. At summary judgment, *Monell* requires the Court to ask whether plaintiff has adduced sufficient evidence of "a direct causal

link between a municipal policy or custom and the alleged constitutional deprivation." *Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022). On the undisputed record, Hempstead acted pursuant to Village policy when it directed AAAA to impound the Sonata and then transferred the vehicle's title to AAAA. Def.'s Rule 56.1 ¶ 23. This compels the conclusion that if, as alleged, Hempstead's actions violated the constitution, the Village's policy was the cause of that violation. *See, e.g.*, *Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 654. As no jury could find otherwise on the causation issue, Hempstead is subject to *Monell* liability.

2. The Seizure was Reasonable Under the Fourth Amendment

Santander argues that Hempstead violated the Fourth Amendment when it seized the Sonata, "prevent[ed] recovery except on Hempstead's terms," and then transferred ownership to AAAA. Pl.'s Mem. in Supp. of Mot. for Summary J. 17 ("Pl.'s Mem."), ECF No. 47-1. Hempstead argues that the Fourth Amendment claim fails because the initial seizure was reasonable. Def.'s Opp'n 6-7.

The impoundment of a vehicle is a seizure that must comport with the Fourth Amendment. *United States v. Lyle*, 919 F.3d 716, 731 (2d Cir. 2019); *see Krimstock v. Kelly*, 306 F.3d 40, 69 (2d Cir. 2002), *abrogated on other grounds by Culley v.*

*Marshall*, 601 U.S. 377 (2024). At the same time, "police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions . . . ." *Lyle*, 919 F.3d at 728. When, in such circumstances, the "initial seizure" is "reasonable," the "failure to return" the seized property does not "state a separate Fourth Amendment claim." *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004); *see Yonkers*, 2024 WL 4817649, at *8 (no Fourth Amendment violation when the government transfers lawfully seized property).

"[W]hether a decision to impound is reasonable under the Fourth Amendment is based on all the facts and circumstances of a given case." *Lyle*, 919 F.3d at 731. Relevant considerations include whether the vehicle is parked on public or private property and whether it could become a public "nuisance" if left unremoved. *Id.* An officer's determination that a vehicle "ha[s] an expired registration" weighs in favor of finding an impoundment reasonable, as "no one could lawfully drive [such a vehicle] away." *United States v. Leeper*, -- F.4th --, 2026 WL 2339544, at *15 (2d Cir. Aug. 13, 2026). And an "officer's adherence to [] standardized criteria may be helpful in evaluating the reasonableness of an impoundment." *Lyle*, 919 F.3d at 731; *see Colorado v. Bertine*, 479 U.S. 367, 375-76

(1987).

On the summary judgment record here, no reasonable jury could find that Hempstead's seizure of the Sonata was unreasonable. The officer on the scene attests that he responded to a complaint concerning a "potentially abandoned" vehicle on a "public roadway" with a "known history of complaints . . . regarding abandoned vehicles." Hovanec Aff. ¶¶ 3-4. Upon identifying the Sonata as the reported vehicle, he determined it to have been abandoned based on several factors, including that it lacked license plates and had an expired, out-of-state registration. *Id.* ¶¶ 5-7; *see Muir v. Vill. of Freeport*, No. 23-CV-3904, 2025 WL 4789609, at *6 (E.D.N.Y. Aug. 13, 2025). In reaching that determination, he followed Hempstead's "standardized criteria," *Lyle*, 919 F.3d at 731, including by asking nearby repair shops whether they claimed the Sonata. Hovanec Aff. ¶¶ 5-7. Santander disputes none of these facts. Pl.'s Rule 56.1 ¶ 3; Def.'s Rule 56.1 ¶ 12.

These facts establish that the impoundment served a "community caretaking function[]." *Lyle*, 919 F.3d at 728. Because the Sonata had an expired registration, no one could lawfully drive it away. *Leeper*, 2026 WL 2339544, at *15. The Sonata also risked becoming a "nuisance" if left unremoved: it was parked without plates at a public intersection where abandoned vehicles often accumulated. *Lyle*, 919 F.3d at 731;

*see Santander Consumer USA, Inc. v. Port Auth. of New York & New Jersey*, No. 20-CV-1997, 2023 WL 12028907, at *6 (E.D.N.Y. Dec. 4, 2023). The seizure was thus reasonable as a matter of law.

Because the seizure was reasonable, Hempstead's retention and subsequent transfer of the Sonata to AAAA cannot provide an independent basis for a Fourth Amendment violation. *Shaul*, 363 F.3d at 187; *see Yonkers*, 2024 WL 4817649, at *12. Hempstead is therefore entitled to summary judgment on the Fourth Amendment claim.

**B. Santander is Entitled to Summary Judgment on its Fifth Amendment Takings Claim**

1. Hempstead Effected an Unlawful Taking

Santander argues that Hempstead committed a taking under the Fifth Amendment when it transferred the Sonata to AAAA as payment for AAAA's tow services. Pl.'s Mem. 7-10.

The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. A "classic taking" occurs when "the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002). The clause applies to both real and personal property; thus, the "Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." *Horne v. Dep't of*

*Agric.*, 576 U.S. 351, 358 (2015).

To establish a violation of the Takings Clause, a plaintiff must demonstrate that: they had a property interest protected by the Fifth Amendment; they were deprived of that interest for public use; and they were not afforded just compensation. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147-51 (2021); *see Ganci v. N.Y.C. Transit. Auth.*, 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2005), *aff'd*, 163 F. App'x 7 (2d Cir. 2005).

The undisputed facts compel the conclusion that Hempstead committed an unlawful Fifth Amendment taking when it transferred the Sonata to AAAA without compensating Santander. We are not the first to reach this conclusion: Judge Karas addressed a functionally identical transfer in *Yonkers*, and held the same. *Yonkers*, 2024 WL 4817649, at *13.

***Property Interest Protected by the Fifth Amendment.*** A security interest is property protected by the Fifth Amendment. *Armstrong v. United States*, 364 U.S. 40, 48 (1960); *see Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 503 F.3d 186, 190 (2d Cir. 2007) ("*Ford Motor Credit II*"). The parties do not dispute that Santander held a perfected security interest in the Sonata at the time of the alleged taking. Def.'s Rule 56.1 ¶ 7; Pl's Rule 56.1 ¶ 8. Santander thus has a property interest protected by the Fifth Amendment.

***Deprivation for Public Use.*** The "total destruction by

the Government of all value of [a] lien[] . . . has every possible element of a Fifth Amendment 'taking.'" *Armstrong*, 364 U.S. at 48. Plaintiffs in *Armstrong* held liens on shipping materials, which they supplied to a shipbuilder operating under a government contract. *Id.* at 41. When the shipbuilder defaulted, the government took title to the materials, leaving the lienholders with no property to proceed against. *Id.* at 41-42, 46. That constituted a taking. "Before the liens were destroyed, the lienholders admittedly had compensable property. Immediately afterwards, they had none. This was not because their property vanished into thin air. It was because the Government for its own advantage destroyed the value of the liens . . . ." *Id.* at 48.

The record here closely resembles the facts in *Armstrong.* Several weeks after the Sonata's impoundment, Hempstead informed Santander that the Village would "acquire ownership of the vehicle" if it went unclaimed. Def's Rule 56.1 ¶ 28. Months later, Hempstead carried through with its stated plan. It "extinguished" Santander's lien by issuing the Salvage Certificate, which classified the Sonata as a "salvage vehicle" and created a new title. *Id.* ¶ 22; Hempstead's Ltr. to Santander dated June 25, 2021 at 1; *see* N.Y. Vehicle & Traffic Law § 1224(3)(c)(McKinney) (providing that "ownership" of an unclaimed vehicle "vest[s] in [the] local authority"). On the

same date, the Village executed a Bill of Sale conveying the Sonata to AAAA. Def’s Rule 56.1 ¶ 33. Before the conveyance, Santander’s lien entitled it to possess the Sonata upon specified conditions. *Id.* ¶ 9. Afterwards, that lien was worthless: title had passed to AAAA free of Santander’s entitlement. *Id.* ¶¶ 28, 33; *Armstrong*, 364 U.S. at 48; *see Yonkers*, 2024 WL 4817649, at *12 (city’s transfer of impounded vehicle to tow company effected taking). Santander has thus established that Hempstead effected a taking on the undisputed facts.

Next, a taking is for a public use if it is “rationally related to a conceivable public purpose.” *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241 (1984). The government’s transfer of property to a private party satisfies that standard so long as the transfer advances a public objective — such as increasing tax revenue — even if a private party incidentally benefits. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 485 (2005). In contrast, “a purely private taking” is “void,” *Midkiff*, 467 U.S. at 245, such that the government cannot satisfy its obligation simply by paying “just compensation.” *Kelo*, 545 U.S. at 477.

The uncontested record establishes that the taking was for a public purpose. Hempstead conveyed the Sonata to AAAA as payment for impoundment services, pursuant to a contract

obligating AAAA to impound vehicles at the Village's request. Def.'s Rule 56.1 ¶ 14; Pl.'s Rule 56.1 ¶ 12. Hempstead has a "conceivable public purpose" in complying with that contract, as the arrangement ensures that illegally parked or abandoned vehicles are cleared from its roadways. *Kelo*, 545 U.S. at 485; *see Yonkers*, 2024 WL 4817649, at *12. And transferring unclaimed vehicles to AAAA and other contractors is rationally related to that purpose: it compensates the tow company even when tow fees remain unpaid, without the use of additional public expenditure. Def.'s Rule 56.1 ¶ 14; *see Yonkers*, 2024 WL 4817649, at *12. That AAAA received a private benefit from the transfer does not defeat Hempstead's overarching public purpose. *See Kelo*, 545 U.S. at 485.

***Hempstead Provided No Compensation.*** Finally, the Takings Clause requires that a municipality provide "just compensation" at the time of the taking. *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 190 (2019). The parties do not dispute that Hempstead has provided no compensation to Santander. Pl.'s Rule 56.1 ¶ 16; Def.'s Rule 56.1 ¶¶ 28, 33. On the uncontested record, therefore, Santander has established the elements of its takings claim; no reasonable jury could conclude otherwise.

2. Hempstead's Defenses to the Takings Claim Are Unavailing

Hempstead raises two main arguments in opposition: that the Fifth Amendment does not apply at all because the Village seized the Sonata under the police power rather than eminent domain, and that Santander abandoned its interest by failing to claim the vehicle.

***The Police Power Exception.*** Hempstead contends that the "Fifth Amendment is not implicated because the Vehicle was seized pursuant to police powers, not eminent domain." Def.'s Opp'n 16. Hempstead relies on *Bennis v. Michigan*, 516 U.S. 442, 452 (1996), for this contention. In *Bennis*, a man was convicted of soliciting prostitution; the conduct occurred in a vehicle he co-owned with his spouse. *Id.* at 443. The state brought a civil action seeking to declare the vehicle a public nuisance due to its involvement in the crime. *Id.* at 443-44. The state prevailed, and thus assumed ownership of the car. *Id.* The spouse then brought a takings claim, but the Court rejected it, holding that "the government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Id.* at 452.

Hempstead's reliance on *Bennis* ignores the key role of the word "lawfully" in the quoted language. The *Bennis* majority

emphasized that Michigan's acquisition of the vehicle was "lawful" because it occurred only after the state had established, at a forfeiture proceeding, that it had been used in criminal activity. *Id.* at 446, 452-53. After concluding that the forfeiture proceeding in question comported with due process, the Court wrote of the Takings claim: "if the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State." *Id.* at 452. Accordingly, no taking occurred.

The opposite is true here: as the following section concludes, Hempstead did *not* comply with the Due Process Clause when it acquired the Sonata without any similar adjudication. *See* Section III.C.1, below. Instead, the Village issued a salvage title and conveyed it to AAAA based only on the fact that no party had claimed it. Def.'s Rule 56.1 ¶ 33.

Hempstead's broader contention — that the police power precludes Santander's takings claim — would extend that exception further than the Takings Clause permits. The courts of appeals have divided over "whether the Takings Clause requires compensation when the government damages private property pursuant to its police power." *Baker v. City of McKinney*, 145 S. Ct. 11, 11 (2024) (Sotomayor, J., statement respecting denial of certiorari). The exception originates in

the common law rule that "in times of imminent peril . . . the sovereign could . . . destroy the property of a few." *United States v. Caltex (Philippines), Inc.*, 344 U.S. 149, 154 (1952). Consistent with that origin, most courts of appeals to address the exception have confined it to "law enforcement's reasonable and necessary destruction of property to protect public safety." *Pena v. City of Los Angeles*, 158 F.4th 1033, 1038 (9th Cir. 2025) (collecting analogous holdings from the Fourth, Fifth, and Sixth Circuits). Only one circuit has held categorically, in a published opinion, that the Takings Clause "does not apply" when the state exercises its police power. *Johnson v. Manitowoc County*, 635 F.3d 331, 336 (7th Cir. 2011).

However, two circuits that have addressed the exception's *duration* have concluded that it does not shield the state from liability for property it retains after the police response — and any related investigation — have concluded. *See Jenkins v. United States*, 71 F.4th 1367, 1373 (Fed. Cir. 2023); *Frein v. Pa. State Police*, 47 F.4th 247, 253 (3d Cir. 2022). In *Jenkins*, for example, the state transferred two vehicles it had seized during a drug investigation to an impound lot after its investigation ended. *Jenkins*, 71 F.4th at 1370-71. The court held that while "the police power may insulate [the state] from liability for an initial seizure, there is no police power exception that insulates [it] from takings liability for the

period after seized property is no longer needed for criminal proceedings." *Id.* at 1373. The Third Circuit adopted a similar rule in *Frein.* 47 F.4th at 253.

The Second Circuit has acknowledged the potential "clash of the takings clause . . . with the police power," *West v. Village of Morrisville*, 728 F.2d 130, 131 (2d Cir. 1984), but does not appear to have addressed how the power extends to the state's retention of property. It has, however, addressed a similar question under the Due Process Clause. *Krimstock*, 306 F.3d at 50. In *Krimstock,* the court held that owners of seized vehicles were entitled to a post-seizure hearing concerning the City's "continued retention" of them, even if the initial seizure was lawful. *Id.* at 49. That reasoning suggests (as common sense would dictate) that, here, too, the state's initial entitlement to confiscate property may provide no justification for retaining it. *See Jenkins*, 71 F.4th at 1370-71.

The Second Circuit has also recognized that the government's confiscation of property and its retention are distinct acts for purposes of when a takings claim accrues. *Sikorsky v. City of Newburgh, New York*, 136 F.4th 56, 62 (2d Cir. 2025). Applying *Tyler v. Hennepin Cnty., Minnesota,* 598 U.S. 631, 647 (2023), the court held that when a municipality confiscates property to satisfy a tax debt, the "harm" accrues not when it claims the property, but when it "ret[ains] . . .

the surplus equity." *Sikorsky*, 136 F.4th at 62; *see Tyler*, 598 U.S. at 647.

*Krimstock* and *Sikorsky* indicate that a lawful confiscation does not insulate the state from takings liability for its continued retention and later transfer of property. *See Jenkins*, 71 F.4th at 1373. In contrast, the categorical rule that Hempstead proposes would eviscerate the Takings Clause: whenever the state's acquisition of property occurred pursuant to the police power, no takings claim could follow, even if its retention and transfer of that property were unconnected to the police power. *See id.* Such a standard would defeat the Clause's guarantee of providing just compensation for property the state takes. *Frein*, 47 F.4th at 253; *see Horne*, 576 U.S. at 358. The Court thus adopts the more limited rule set out in *Jenkins*. *See* 71 F.4th at 1373.

On the summary judgment record here, Hempstead cannot rely on the police power exception. Hempstead points to no evidence that its continued retention of the Sonata and later transfer to AAAA served an investigative or other police function. The uncontested evidence compels the contrary conclusion: the Village assumed ownership over the Sonata and transferred it to AAAA to compensate AAAA for its services. Def.'s Rule 56.1 ¶¶ 23, 33.

Because the exception reaches only the impoundment, it

cannot "insulate" the Village from liability for the taking established here. *See Jenkins*, 71 F.4th at 1373. And as shown below, Hempstead's conveyance to AAAA was independently unlawful because Hempstead did not afford the opportunity to be heard that due process requires. *See* Section III.C.1, below.

***Santander Did Not Abandon Its Property Interest.***

Hempstead next argues that Santander abandoned its property interest by failing to retrieve the Sonata in accordance with Hempstead's Code. Def.'s Opp'n 18; *see generally Tyler*, 598 U.S. at 646 (referring to the "long tradition of States taking title to abandoned property"). Abandonment requires the "surrender or relinquishment or disclaimer of *all* rights in the property." *Tyler*, 598 U.S. at 647 (emphasis added). So, a plaintiff does not abandon property merely by refusing to pay taxes or other charges accrued in connection with its property. *Tyler*, 598 U.S. at 647.

In support of its abandonment argument, Hempstead points out that Santander failed to claim the Sonata in accordance with Hempstead's protocols. Def.'s Rule 56.1 ¶¶ 12, 28. The Village also points to Officer Kirichenko's deposition testimony that it only transferred the Sonata to AAAA several months after Santander received notice of the impoundment. Kirichenko Dep. 37. Santander does not dispute these facts.

Pl.'s Rule 56.1 ¶ 9.

No reasonable jury could find that Santander abandoned its interest on this record. First, Santander's failure to pay tow fees does not alone establish abandonment. In *Tyler*, the Court held expressly that Hennepin County could not "frame th[e] failure [to pay property taxes] as abandonment to avoid the demands of the Takings Clause." 598 U.S. at 647.[3] Second, the Village's classification of the Sonata as "abandoned" cannot dictate the status of Santander's constitutional rights. *See Ford Motor Credit Co. v. N.Y.C. Police Dep't*, 394 F. Supp. 2d. 600, 614 (S.D.N.Y. 2005) ("*Ford Motor Credit I*"). Third, and perhaps most important, the uncontested record reveals that Santander *did* take action to recover the Sonata: retaining America Recovery within days of the impoundment, and later retaining an outside law firm. Pl.'s Rule 56.1 ¶¶ 7, 16. A creditor that hires a repossession agent and an outside law firm has not "relinquished" its interest — if anything, it has asserted it. *Tyler*, 598 U.S. at 647; *see Ford Motor Credit I* 394 F. Supp. 2d at 614.

Santander is therefore entitled to summary judgment on its takings claim.

---

[3] The Court gave no indication in *Tyler* that the claimant's *ability* to pay should affect this principle.

3. Santander's Compensatory Damages for its Takings Claim

Given the taking, Santander is entitled to just compensation. In this regard, Santander argues that it is "entitled to the value of the [Sonata] at the time [it] was seized on June 2, 2021." Pl.'s Mem. 24.

a. Santander's Damages are Limited to the Vehicle's Fair Market Value at the Time of the Taking, Less the Tow Fees Due

Compensation for a taking "must generally consist of the total value of the property when taken, plus interest from that time." *Knick*, 588 U.S. at 190; *see Ford Motor Credit II*, 503 F.3d at 191. "Fair market value is the default measure of just compensation." *Pung v. Isabella Cnty., Michigan*, 146 S. Ct. 1964, 1970 (2026).

When the government has a valid claim against property, it may confiscate that property and retain up to the value of its claim. *Tyler*, 598 U.S. at 639. In *Tyler*, Hennepin County sold plaintiff's condominium to recover unpaid property taxes. *Id.* The property sold for more than the unpaid taxes, and the County kept the surplus. *Id.* at 635. The Court held that the County "had the power to sell [plaintiff's] home to recover the unpaid property taxes," but could not "use the toehold of the tax debt to confiscate more property than was due." *Id.* at 639.

In the instant context, the government commits no taking when it auctions an unclaimed, impounded vehicle and remits the proceeds to the lienholder minus tow expenses. *HVT, Inc. v. Port Auth. of New York & New Jersey*, 798 F. Supp. 3d 349, 379 (E.D.N.Y. 2025). And Hempstead had the authority to exact fees in connection with the impoundment. A municipality may charge reasonable fees pursuant to its police power. *Harrell v. City of New York*, 138 F. Supp. 3d 479, 492 (S.D.N.Y. 2015); *see Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 662. As such, Santander's compensatory damages are limited to the Sonata's value in excess of the tow and storage fees due at the time the taking occurred. *Tyler*, 598 U.S. at 642; *HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-5867, 2018 WL 3134414, at *15 (E.D.N.Y. Feb. 15, 2018) (reducing damages by unpaid tow fees), *report and recommendation adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018).

Santander claims — incorrectly — that it is entitled to the vehicle's value as of the date of the *impoundment*. As discussed above, however, the impoundment was a lawful seizure. *See* Section III.A.2, above. Instead, Santander's award must be measured from September 16, 2021: the day on which Hempstead "extinguished" Santander's lien, issued the salvage title, and transferred ownership of the Sonata to AAAA. Def.'s Rule 56.1 ¶ 33; Pl.'s Rule 56.1 ¶ 12; *see* Hempstead's Ltr. to Santander

dated June 25, 2021.

b. The Court Refers the Calculation of Damages for a Report and Recommendation

The Court respectfully refers the calculation of compensatory damages to Magistrate Judge Lindsay for a Report and Recommendation. Damages should be calculated as the Sonata's fair market value, plus interest, measured from September 16, 2021, less the total impoundment fees due as of that date. *See* Section III.B.3.a, above.

**C. Santander is Entitled to Summary Judgment On Its Due Process Claim**

1. Hempstead Violated Santander's Due Process Rights

Santander argues that Hempstead violated its procedural due process rights by failing to provide a hearing concerning the impoundment and release of the Sonata before transferring it to AAAA. Pl.'s Mem. 12. Hempstead argues that mailing Santander notice of the impoundment furnished all the process that the company was due. Def.'s Opp.'n 11. Hempstead also argues that Santander never "requested that the Village arrange a hearing before a neutral decisionmaker." *Id.* at 13. However, the Village concedes that it offers no hearing to claimants, even upon request. Kirichenko Dep. 45:1-3. Thus, Santander's only way to retrieve the vehicle under Hempstead's Code was by paying the tow fees. Def.'s Rule 56.1 ¶ 31; Pl.'s Rule 56.1 ¶¶ 8-9.

A "procedural due process claim is composed of two elements: (1) the existence of a property . . . interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). The second element requires an assessment of "what process plaintiff[] [was] due before [it] could be deprived of that interest." *Kapps v. Wing*, 404 F.3d 105, 118 (2d Cir. 2005).

The Court does not write on a blank slate on either element: it is well-established that lienholders are entitled to an opportunity to be heard *before* the state permanently deprives them of their interest. *E.g.*, *Ford Motor Credit II*, 503 F.3d at 193-94. Applying the *Ford Motor* decision, district courts have consistently concluded that impoundment policies like Hempstead's violate the due process clause. *Mercedes-Benz Fins. Services*, 770 F. Supp. 3d at 656-58 (collecting cases).

As to the first element, Santander's security interest is property protected by the Due Process Clause. *Ford Motor Credit II*, 503 F.3d at 191. "[E]ven the temporary or partial impairments to property rights that . . . liens[] and similar encumbrances entail" are deprivations for purposes of due process. *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991). And when property is transferred to a third-party clear of a lien, the lienholder is "permanently deprive[d]" of its interest. *TD Auto*

*Fin. LLC v. Cnty. of Putnam*, No. 21-CV-9080, 2023 WL 6295116, at *9 (S.D.N.Y. Sept. 27, 2023).

Hempstead deprived Santander of that interest in two ways: temporarily and then permanently. First, Hempstead conditioned the release of the Sonata on the payment of tow and storage fees. Def.'s Rule 56.1 ¶ 31. The fees functioned as a mechanic's lien: Santander was required to pay them to retrieve the vehicle. *Am. Honda Fin. Corp. v. Township of Aston*, 546 F. Supp. 3d 371, 379 (E.D. Pa. 2021) (citing *Doehr*, 501 U.S. at 12). Second, Hempstead extinguished Santander's lien when it declared the Sonata "salvage vehicle" and transferred ownership to AAAA. Def.'s Rule 56.1 ¶ 33. Hempstead thus "permanently deprive[d]" Santander of its property interest. *TD Auto Fin.*, 2023 WL 6295116, at *9. No reasonable jury could find otherwise on this record.

The next question is "whether existing state procedures are constitutionally adequate." *Kapps*, 404 F.3d at 112. When the state impounds a car and conditions its return on the payment of fees, claimants are entitled to a hearing concerning the lawfulness of the impoundment and the fees charged. *TD Auto Fin.*, 2023 WL 6295116, at *9 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *see United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). A municipality need not provide a hearing *before* it imposes fees,

but must do so before a "final deprivation of" the impounded vehicle. *TD Auto Fin.*, 2023 WL 6295116, at *9; *see Honda Lease Tr. v. Malanga's Auto.*, 152 F.4th 477, 487 (3d Cir. 2025). Lienholders have the same right to a hearing as owners. *Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 659.

Hempstead offered Santander no hearing at any point following the Sonata's impoundment. Def.'s Rule 56.1 ¶ 26; Pl.'s Rule 56.1 ¶¶ 8-10. This record leaves no doubt, therefore, that Hempstead violated Santander's due process rights. *See Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 659.

Hempstead's argument that its letter to Santander was sufficient process is unavailing. That letter gave "no opportunity to challenge" the impoundment or the conditions of release. *Honda Lease Tr.*, 152 F.4th at 487. It thus did not provide the process to which Santander was entitled.

Nor was Santander required to request a hearing in the first instance. A "party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation" to provide adequate process. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983); *see Krimstock*, 306 F.3d at 50 (claimants of impounded vehicles must "be *given* a prompt" hearing) (emphasis added). In any case, even if Santander had requested a hearing, Hempstead has no procedure for providing one. Kirichenko Dep. 45:1-3.

To be sure, Santander could have sought to compel Hempstead to release the vehicle in an Article 78 proceeding. N.Y. C.P.L.R. § 7801. But such a proceeding "does not provide [the] prompt and effective means . . . to challenge the legitimacy of the City's" impoundment that the Due Process Clause requires. *Krimstock*, 306 F.3d at 60; *see HVT, Inc.*, 2018 WL 3134414, at *13.

Accordingly, Santander is entitled to summary judgment on its due process claim.

2. Hempstead Must Provide Claimants of Impounded Vehicles with an Opportunity to Be Heard

District courts have "considerable latitude to frame a decree with input from the parties" to address a due process violation. *Nnebe v. Daus*, 644 F.3d 147, 160 (2d Cir. 2011). In cases addressing impoundment policies similar to Hempstead's, courts have directed the parties to submit a joint proposal to address the lack of a hearing opportunity. *E.g.*, *Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 659 (collecting cases). That approach is also justified here.

The parties are therefore directed to submit a joint proposal that provides claimants of impounded vehicles an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The proposal must permit a claimant to challenge

whether (1) the impoundment was lawful and complied with Hempstead's Code, (2) the fees assessed are authorized under the Code, and (3) the vehicle is properly subject to auction or transfer under the Code. *See, e.g.*, Proposed Hearing Procedures, *HVT, Inc. v. Port Authority of New York*, 15-CV-05867 (E.D.N.Y. Aug. 8, 2024), ECF No. 126-1. The hearing must be available before Hempstead declares a vehicle subject to transfer or auction. *See TD Auto Fin.*, 2023 WL 6295116, at *9.

3. Santander Cannot Recover Compensatory Damages Twice

Santander seeks the Sonata's fair market value in compensatory damages for both its due process and takings claims. *See* Pl.'s Mem. 23-24. But a plaintiff cannot "recover twice for the same injury." *Bender v. City of New York*, 78 F.3d 787, 794 n.5 (2d Cir. 1996). Santander's due process injury is the same as its takings' injury — loss of its security interest. Because compensatory damages are awarded on the takings claim, Santander may not recover again for its due process claim.

Santander also seeks nominal damages. "Because the right to procedural due process is absolute . . . the denial of due process should be actionable for nominal damages." *Carey v. Piphus*, 434 U.S. 247, 266 (1978); *see Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 666. Santander is thus awarded $1 in nominal damages.

### D. Hempstead is Entitled to Summary Judgment on Santander's State Constitutional Claims

Santander also argues that Hempstead violated rights under the New York State Constitution analogous to those secured by the federal constitution. Pl.'s Mem. 21; *see* N.Y. Const., art. 1 § 6 (due process); *id.* § 7 (takings); *id.* § 12 (search and seizure). But a private right of action under the state constitution exists only when "remedies are otherwise unavailable." *Antal v. Town of Riverhead*, 665 F. App'x 9, 13 (2d Cir. 2016); *see Brown v. State of New York*, 89 N.Y.2d 172, 192 (1996). Santander has remedies available under Section 1983. Consequently, no private right of action exists under the state constitution, and Hempstead is entitled to summary judgment on Santander's state claims.

### E. Santander is Entitled to Declaratory Relief

Santander seeks a judgment declaring Hempstead's impoundment practices unconstitutional. Pl.'s Mem. 24-25. A federal court "may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). In determining whether to issue a declaratory judgment, the court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire &*

*Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

Both considerations weigh in favor of declaratory relief. A declaration would clarify Hempstead's obligations to lienholders with interests in vehicles impounded in Hempstead. It would also offer Santander relief from future disputes concerning impounded vehicles in Hempstead. *See, e.g.*, *Mercedes-Benz Fin. Servs.*, 770 F. Supp. 3d at 667; *Toyota Lease Tr. v. Vill. of Freeport*, No. 20-CV-2207, 2023 WL 4443992, at *12 (E.D.N.Y. Jan. 24, 2023), *report and recommendation adopted*, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023). The Court therefore declares:

> ***Fifth Amendment Taking.*** Hempstead effects an unlawful taking when it transfers ownership of an impounded vehicle to a towing contractor as payment for towing or storage fees without remitting to known lienholder(s) the vehicle's value in excess of the fees lawfully owed.
>
> ***Due Process Violation.*** Hempstead deprives known lienholder(s) of property without due process when it deems an impounded vehicle "abandoned" — and then transfers or auctions the vehicle — without first affording that lienholder notice and an opportunity to be heard on the lawfulness of the impoundment, the charges assessed, and the vehicle's release.

## IV. Conclusion

For the foregoing reasons, Santander's motion for summary judgment on its takings and due process claims under 42 U.S.C. § 1983 is granted. Santander is also awarded $1 in nominal damages and a declaratory judgment, as set forth above.

Hempstead's motion as to Santander's Fourth Amendment claim and its claims under the New York State Constitution is granted.

On or before November 16, 2026, the parties are directed to submit a joint proposal articulating a hearing procedure that complies with the requirements set out in this Order. The Court respectfully refers the calculation of compensatory damages to Magistrate Judge Lindsay for a Report and Recommendation.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 15, 2026
Brooklyn, New York